April 28, 2022

**VIA ECF**

Hon. Paul G. Gardephe U.S.D.J.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

>RE:  *U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE1 v. Goldman Sachs Mortgage Company & GS Mortgage Securities Corp.* (No. 1:19-cv-02305) [rel. 1:19-cv-02307]
>
>*U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE2 v. Goldman Sachs Mortgage Company & GS Mortgage Securities Corp.* (No. 1:19-cv-02307) [rel. 1:19-cv-02305] (collectively, the "Actions")

Dear Judge Gardephe:

On behalf of plaintiff U.S. Bank National Association (the "Trustee") and defendants Goldman Sachs Mortgage Company ("GSMC") & GS Mortgage Securities Corporation ("GS Securities" and together with "GSMC," "Goldman" or the "Defendants"), we respectfully submit herewith revised case management plans (*see* Exhibits A and B) pursuant to Judge Nathan's March 10, 2022 order precluding the use of sampling in these Actions, 2022 WL 719369, at *9 (S.D.N.Y. Mar. 10, 2022) (the "Sampling Order"), and Your Honor's April 22, 2022 order. The parties' initial case management plans have not previously been extended.

## The Trustee's Allegations

These are residential mortgage-backed securities ("RMBS") "putback" actions. On behalf of each Trust, the Trustee seeks to compel GSMC to repurchase, or otherwise compensate the Trusts for, loans sold to the Trusts that do not comply with GSMC's representations and warranties.[1] GSMC, as "Sponsor" of the securitizations that created each Trust, acquired and conveyed approximately 8,600 mortgage loans to GS Securities, which, as "Depositor," then deposited those loans into the Trusts. In conveying the loans, GSMC made representations and warranties concerning each loan and agreed that, if a loan breached a warranty and such breach materially and adversely affected the value of that loan, GSMC would cure the breach or repurchase that loan. GSMC's repurchase obligation is triggered by either (i) GSMC's receipt of notice from another party identifying an allegedly materially breaching loan or (ii) GSMC's independent discovery of an allegedly materially breaching loan.

## The Sampling and Notice Decisions

The Trustee had intended to prove its case by extrapolating liability and damages from a sample of the loans at issue. As the Trustee noted in the original case management plans,

---

[1] Defendants dispute the Trustee's allegations.

however, if sampling were disallowed, "the Trustee believes the parties would require significantly more time to complete expert discovery."[2] The Trustee requested, and Judge Nathan permitted, an early motion for partial summary judgment on the permissibility of sampling under the relevant contracts. In the Sampling Order, Judge Nathan precluded the use of sampling, such that the Trustee will now need to reunderwrite each loan for which it seeks recovery (*i.e.*, assess the characteristics of the loans by, *inter alia*, comparing information regarding the borrower, the loan, and the mortgaged property against the representations and the underwriting guidelines applicable to those loans, on a loan-by-loan basis). Reunderwriting is time-consuming and has no economies of scale—every loan added to the reunderwriting population adds approximately the same time and expense to the process. In addition to increasing the work on the Trustee's end, the Sampling Order also means Defendants may need to respond to additional loans. Following the Sampling Order, Judge Nathan ordered the submission of new plans.

One week after the Sampling Order, the New York Court of Appeals overruled the First Department's precedents regarding "notice" and relation back. *See U.S. Bank N.A. v. DLJ Mortg. Capital, Inc.*, Index No. 650369/2013, 2022 WL 801440 (Mar. 17, 2022) ("*HEAT 2007-1*"). According to *HEAT 2007-1*, "the repurchase protocol ... clearly contemplate[s] a loan-by-loan approach," such that a pre-suit notice triggers the repurchase protocol only as to loans specifically identified in the notice. Prior to filing suit, the Trustee sent a letter in each action to GSMC purporting to identify, collectively, approximately 1,600 loans allegedly breaching representations and warranties. In light of *HEAT 2007-1*, the Trustee believes it must now conduct additional fact discovery and spend extra time reunderwriting to determine the extent to which GSMC independently "discovered" allegedly materially breaching loans.[3] Defendants dispute that any additional fact discovery is required, other than time to complete depositions.

In short, the Trustee believes these recent decisions will require broader fact discovery and expert discovery. Defendants dispute that these decisions require broader fact discovery and reserve the right to object to additional discovery requests, but have negotiated a revised case schedule in good faith that includes an extension of both fact and expert discovery deadlines.

**The Amended Case Management Plans**

Enclosed is the parties' Amended Case Management Plan, which reflects a good faith negotiated compromise between the parties.

By employing sampling, the Trustee had initially planned to reunderwrite approximately

---

[2] Goldman Sachs stated in the original case management plans "that the proposed case schedule does not depend on sampling."

[3] Before it was overturned by *HEAT 2007-1*, the First Department held in *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.* that "[p]laintiffs' presuit letters put defendant on notice that the certificateholders whom plaintiffs (as trustees) represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made." 133 A.D.3d 96, at *108 (1st Dep't 2015). The Trustee's position is that *Nomura* stood for the proposition that an RMBS trustee could identify additional breaching loans during discovery, notify the defendant of those additional loans, and amend its complaint to include them. The Trustee had relied on this precedent in planning discovery. Goldman disputes the Trustee's characterization of *Nomura* and the contention that *HEAT 2007-1* overruling *Nomura* had any impact on planning fact discovery in these cases.

2,800 loans across the two Trusts.  Without sampling, however, the Trustee now intends to reunderwrite additional loans.  In addition, the Trustee believes that it will need to redo much of the reunderwriting work it previously completed prior to the *HEAT 2007-1* decision.  Defendants also need sufficient time to respond to the Trustee's expanded population of loans for reunderwriting.  Because reunderwriting vendor capacity is extremely limited, the parties are unable to meaningfully increase the rate of reunderwriting and believe extending the re-underwriting schedule is the most reasonable way to proceed in these matters.

Respectfully submitted,

| | |
|---|---|
| */s/ Christopher P. Johnson* | */s/ Richard A. Jacobsen* |
| Christopher P. Johnson | Richard A. Jacobsen, Jr. |
| Zachary W. Mazin | John Ansbro |
| Jared S. Siegel | Thomas N. Kidera |
| Daniel I. Hendler | Jennifer C. Lee |
| | |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

4888-4510-6972