

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000
**orrick.com**

May 22, 2023

**Richard A. Jacobsen**

E  rjacobsen@orrick.com
D  +1 212 506 3743

*Via Electronic Filing and Email*

Hon. Jennifer E. Willis, U.S.M.J.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 228
New York, New York 10007

> Re:  *U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE1 v. Goldman Sachs Mortgage Company & GS Mortgage Securities Corp. (No. 1:19-cv-02305) [rel. 1:19-cv-02307]*
>
> *U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE2 v. Goldman Sachs Mortgage Company & GS Mortgage Securities Corp. (No. 1:19-cv-02307) [rel. 1:19-cv-02305]* (collectively, the "Actions")

Dear Judge Willis:

      On behalf of Defendants Goldman Sachs Mortgage Company and GS Mortgage Securities Corporation (together, "Goldman"), we write pursuant to Rules I(B) and II(A) of Your Honor's Individual Rules to raise another discovery issue that has just ripened.  The instant dispute concerns Plaintiff U.S. Bank National Association's ("U.S. Bank") refusal to prepare a Rule 30(b)(6) corporate witness on a limited and highly relevant topic: the legal and factual positions U.S. Bank adopted in another RMBS litigation, *Commerzbank AG v. U.S. Bank National Association*, Case No. 1:16-cv-04569 (S.D.N.Y.), which are diametrically opposed to those U.S. Bank has taken here.  Attorneys for U.S. Bank and Goldman met and conferred regarding this issue on May 1 and May 12, 2023.  Goldman is happy to discuss this issue during the May 23, 2023 conference or at another time convenient for the Court.

      By way of background, U.S. Bank has been the subject of numerous lawsuits in recent years, including in *Commerzbank*, for allegedly failing to properly discharge its duties as RMBS trustee.  The central issues in those cases are identical to the key questions here:  (i) whether loans breached representation and warranties ("reps") in Pooling and Servicing Agreements ("PSAs"); and (ii) whether those breaches have the requisite material and adverse effect on certificateholders' interests (an "MAE") to trigger repurchase obligations.  Ex. A (*Commerzbank* Compl.) ¶¶ 68-98.

      Goldman timely noticed a U.S. Bank Rule 30(b)(6) corporate representative regarding its positions as defendant in *Commerzbank*—which involves the very same GSAMP shelf at issue

here—relating to RMBS repurchase protocols, the MAE requirement, the meaning of PSA reps, and alleged breaches of those reps.  Ex. B (30(b)(6) Notice, Topic 24).  Goldman seeks this discovery to prove that U.S. Bank actually agrees with Goldman about what the PSA reps mean, the evidence that may be used to prove breaches, as well as the timing of and evidence required for the MAE requirement.  Goldman also seeks this discovery because it likely will undermine the credibility of U.S. Bank's experts in these actions.  While U.S. Bank seeks to shield this testimony from the Court—because it will support Goldman's arguments—its relevance is manifest.

Moreover, U.S. Bank's overbreadth and undue burden objections should fall on deaf ears.  U.S. Bank is seeking hundreds of millions of dollars of damages largely by flip-flopping its stance on critical issues—any minimal inconvenience U.S. Bank incurs by preparing a witness on a narrow topic is outweighed by the stakes of these litigations.  While Goldman disagrees with U.S. Bank's objections, in the spirit of compromise, Goldman is willing to identify the documents it will show U.S. Bank's corporate representative on this topic in advance of any deposition.

## I.  Legal Standard

As with other forms of discovery, a 30(b)(6) deposition notice must identify topics that are "relevant to any party's claim or defense."  *See* Fed. R. Civ. P. 26(b)(1).  Moreover, "[l]ike other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'"  *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019).  This discovery easily satisfies this standard.

## II.  U.S. Bank's Positions In *Commerzbank* Are Highly Relevant

U.S. Bank has not disputed that *Commerzbank* bears striking similarities to the instant litigations.  Nor could it.  The critical reps at issue overlap, the PSAs are materially identical, and the very same repurchase protocol is at the heart of the dispute.  Moreover, just as U.S. Bank will retain a reunderwriting expert to conduct a loan-by-loan analysis here, it hired the same expert in *Commerzbank*.  Ex. C (U.S. Bank Re-Underwriting Report).  The only difference is that the shoe was on the other foot in *Commerzbank*—U.S. Bank was an RMBS defendant and took positions identical to Goldman in these actions.  As the following examples illustrate, U.S. Bank is resisting this discovery solely to avoid damaging deposition testimony from its corporate representative.

**"Missing Document" Breach Claims**.  In its complaint, U.S. Bank alleges that Goldman failed to ensure that there were "neither missing nor defective Mortgage Loan documents associated with the Mortgage Loan files."  HE2 ECF No. 63 ¶¶ 38, 45.  U.S. Bank's forthcoming reunderwriting expert will likely seek to substantiate this allegation by reviewing loan files produced here—more than fifteen years after the loans were originated—and claiming that documents could not be located, and alleging that the loan therefore breaches a PSA rep.  But when it was a defendant, U.S. Bank and its expert represented that "missing document" allegations are flawed and improper because they "are based on an unfounded inference that the absence of a document in the version of the loan file produced in this litigation, more than ten years after the loan was originated, proves that the document was never obtained at origination."  Ex. C ¶ 122.

May 22, 2023
Page 3

Goldman agrees and is entitled to ask U.S. Bank why it believes that missing document allegations are legitimate in this case, but "unfounded" when U.S. Bank is defending against RMBS claims.

**The MAE Requirement**. U.S. Bank asserts—as it must under the PSA—that each alleged breach had an MAE. HE2 ECF No. 63 ¶¶ 42, 60, 65. As it has time and again when it is an RMBS plaintiff, U.S. Bank and its reunderwriting expert will likely argue that an MAE must be proven as of loan origination (here, in 2005 or 2006), or when the deals closed in 2007. In *Commerzbank*, however, U.S. Bank argued the opposite, claiming that an MAE should only be assessed as of the date that notice of a breach is provided or when discovery of a breach occurs—oftentimes *years after a securitization closes*. Indeed, U.S. Bank sought to exclude MAE testimony as of earlier points in time because it is legally "irrelevant" and "ignores that loan characteristics can change dramatically between when the loan was issued and when a [rep] breach is discovered." Ex. D (U.S. Bank Br.) at 23. Goldman agrees with U.S. Bank's position in *Commerzbank*.

**Use Of Post-Origination Sources**. U.S. Bank also claims that Goldman securitized loans that do not comply with underwriting guidelines. HE2 ECF No. 63 ¶¶ 49, 52. U.S. Bank's forthcoming reunderwriting expert report will undoubtedly rely on post-closing sources, such as data from the Bureau of Labor Statistics ("BLS"), to allege that borrowers misrepresented their incomes when they applied for their mortgage. But once again, U.S. Bank and its experts told a different story in *Commerzbank*, calling BLS data "inappropriate" and "unusable." Ex. C ¶¶ 138-39. Goldman is entitled to know why U.S. Bank believes BLS data has no place in an RMBS litigation when it is a defendant, but believes such sources are appropriate when it is a plaintiff.

Simply put, U.S. Bank should be held to answer for its repeated inconsistent positions, which (i) will support Goldman's claims and defenses here, and (ii) potentially undermine the credibility of U.S. Bank's expert witnesses in these actions.

### III. Goldman's Request Is Proportionate To The Need Of This Case And Will Not Cause U.S. Bank Any Undue Burden

U.S. Bank's objections to Goldman's 30(b)(6) deposition notice offer the conclusory assertion that preparing a witness on this topic is "unduly burdensome," "overly broad," and that the matters for examination have not been sufficiently described. Ex. E (U.S. Bank Objections) at 14. But U.S. Bank's conclusory written objections never explain why that is and U.S. Bank similarly chose not to elaborate on this position during the parties' multiple meet and confers. In any event, these objections are baseless. U.S. Bank is intimately familiar with its publicly stated positions from less than 18 months ago, its counsel no doubt has these materials at its disposal, and it is simply not credible to claim that in a nine-figure litigation U.S. Bank cannot educate a witness about a specifically enumerated set of issues from a single litigation.

Notwithstanding U.S. Bank's unsubstantiated objections, Goldman has offered compromise proposals to address U.S. Bank's concerns. For example, Goldman offered to limit this topic exclusively to *Commerzbank*, as opposed to the numerous other litigations in which U.S. Bank took inconsistent positions. Goldman will also identify for U.S. Bank the specific documents and reps it intends to discuss concerning this topic in advance of the deposition.

Respectfully submitted,

*/s/ Richard A. Jacobsen*

Richard A. Jacobsen