# McKool Smith

| Christopher P. Johnson | 1301 Avenue of the Americas | Telephone: (212) 402-9400 |
|---|---|---|
| Direct Dial: (212) 402-9416 | 32nd Floor | Facsimile: (212) 402-9444 |
| cpjohnson@mckoolsmith.com | New York, NY 10019 | www.mckoolsmith.com |

August 5, 2024

**VIA ECF**

Hon. Paul G. Gardephe, U.S.D.J.
United States District Court
 for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 705
New York, NY 10007

      RE:    *U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE2 v. Goldman Sachs Mortgage Company & GS Mortgage Securities Corp.* (Case No. 1:19-cv-02307) [rel. 1:19-cv-02305]

Dear Judge Gardephe:

    On behalf of plaintiff U.S. Bank National Association, in its capacity as trustee (the "Trustee") of GSAMP Trust 2007-HE2 (the "Trust"), we write pursuant to this Court's Rule IV(A) to request a pre-motion conference. The Trustee proposes to file a Fed. R. Civ. P. 15 motion for leave to file a Second Amended and Supplemental Complaint (the "SASC")[1] solely to identify as "noticed" 2,413 of the thousands of loans already encompassed within this Action (the "Motion").

    Specifically, the relevant contracts contain a "repurchase protocol" that requires defendant Goldman Sachs Mortgage Company ("Goldman") to cure or repurchase from the Trust loans that materially breach Goldman's representations and warranties ("Defective Loans") within 90 days of i) Goldman receiving contractual "notice" of those Defective Loans or ii) Goldman's independent "discovery" of those Defective Loans. The Trustee's SASC seeks to add allegations that, i) during discovery in this Action, the Trustee's experts identified 2,413 Defective Loans in the Trust, ii) the Trustee provided contractually-proper notice of those Defective Loans to defendants Goldman and GS Mortgage Securities Corp. (together, "Defendants"), and iii) Goldman failed to cure or repurchase those 2,413 Defective Loans within 90 days.

    If the Trustee is granted leave, the proposed SASC will not impact the scope or schedule of the remaining discovery, but should significantly decrease the issues to be tried and the time and evidence needed for trial. Defendants oppose the Motion.

---

[1] For the Court's convenience, attached hereto as Exhibit A is a redline comparison of the First Amended Complaint (ECF No. 63, "FAC") and the SASC showing all the proposed changes in the SASC.

**McKool Smith**
A Professional Corporation • Attorneys
Austin | Dallas | Houston | Los Angeles | Marshall | New York | Washington

I. **Background**

This Action principally seeks specific performance of Goldman's contractual obligation to repurchase Defective Loans from the Trust. (FAC ¶ 76.) The Trustee has alleged that, in a March 1, 2007 Pooling and Service Agreement (the "PSA") governing the conveyance of approximately 5,000 loans (the "Mortgage Loans") to the Trust and the agreements incorporated therein, Goldman made numerous materially false representations and warranties regarding the nature and quality of those Loans. (FAC ¶¶ 1, 3, 59.) The agreements' "repurchase protocol" requires Goldman to cure or repurchase, within 90 days, Defective Loans i) as to which Goldman received "notice" from another PSA party or ii) that Goldman independently discovered. (FAC, Exhibit 1 (PSA), Ex. S (Representation and Warranties Agreement ("RWA")), Section 3.) Goldman's repurchase obligation has no expiration date, but continues throughout the PSA's life.

The Trustee commenced this action on February 21, 2019 (*see* ECF No. 01-1, Summons With Notice ("SWN")) after Goldman failed to repurchase loans within 90 days of the Trustee's January 23, 2019 contractual notice of 1,041 Defective Loans that had been identified by a Trust certificateholder (the "Pre-Complaint Breach Notice") (FAC ¶ 61). The Trustee sought specific performance of Goldman's repurchase obligations regarding all Defective Loans in the Trust (FAC ¶ 64), including those as to which Goldman had received notice and those that Goldman had independently discovered (*see* FAC ¶¶ 48–61).

To streamline discovery and trial, the Trustee had planned to use statistical sampling to prove liability and damages regarding the Defective Loans in the Trust. On March 10, 2022, however, this Court denied the Trustee's motion for partial summary judgment regarding authority under the PSA to sample. (ECF No. 118 (Nathan, J.).) One week later, on March 17, 2022, the New York Court of Appeals held that repurchase protocols like that in the PSA here require loan-specific notice. *See U.S. Bank N.A. v. DLJ Mortg. Capital Inc.*, 38 N.Y.3d 169, 180 (2022) ("*HEAT 2007-1*"); *see also ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods.*, 25 N.Y.3d 581, 599 (2015) ("*ACE*") (holding that repurchase protocol notice is a procedural prerequisite to suit, not a substantive condition precedent to the claim).[2] In light of these rulings, the Trustee and Defendants negotiated an Amended Civil Case Management Plan pursuant to which the Trustee's experts would re-underwrite several thousand Mortgage Loans. (ECF No. 158 ¶ 8(b)(i)(d).) On April 15, 2024, the Trustee timely served expert reports indicating, *inter alia*, that Robert W. Hunter and Peter R. Rubinstein, Ph.D. had identified 2,413 Defective Loans.

To satisfy the procedural condition precedent to suit under PSA Section 2.07, *ACE*, and *HEAT 2007-1*, the Trustee on April 25, 2024 provided Defendants and other PSA parties with loan-specific notice of the 2,413 Defective Loans identified by Mr. Hunter and Dr. Rubinstein (the "Post-Complaint Breach Notice"). Goldman not only failed once again to repurchase the Defective Loans within the required 90 days (*i.e.*, by July 25, 2024), but, in a June 25, 2024 letter

---

[2] While the *HEAT 2007-1* court dismissed claims as to 480 loans that had not been included in the pre-suit notice to the defendant there, the court did so because the plaintiff had merely "identified these loans in an amended reply expert report" and "did not attempt to invoke CPLR 203 (f) ['relation back' doctrine] after filing an amended complaint to add new claims following satisfaction of the condition precedent with respect to the 480 loans at issue." 38 N.Y.3d at 183. Here, the Trustee proposes to do what was not done in *HEAT 2007-1*: satisfy the procedural prerequisite with contractual notice and, at least 90 days later, file an amended complaint that relates back to the commencement of the extant Action.

(the "Goldman Response"), affirmatively disclaimed any obligation to respond to the Post-Complaint Breach Notice. The Trustee now seeks leave to file a Second Amended and Supplemental Complaint solely to add the post-FAC facts regarding Goldman's failure to repurchase the Defective Loans identified in the Post-Complaint Breach Notice.

## II. Justice Requires That Leave to Amend and/or Supplement Be Granted

On a motion for leave to amend a complaint, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant … undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment, etc. …" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (quoting *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993)).[3] Supplementation under Fed. R. Civ. P. 15(d) covers "transactions or occurrences or events which have happened since the date of the pleading." *Dells, Inc. v. Mundt*, 400 F.Supp. 1293, 1295 (S.D.N.Y. 1975). Supplementation "should be 'freely permitted when the supplemental facts connect … to the original pleading,'" *Pflaum v. Town of Stuyvesant*, No. 1:11-cv-335, 2014 WL 12891533, at *7 (N.D.N.Y. Oct. 23, 2014), and is governed by the same *Foman* test that governs amendments. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

Justice will be served by permitting the Trustee to file the proposed SASC to allege notice-based compliance with the repurchase protocol for the 2,413 Defective Loans identified in the Post-Complaint Breach Notice (*i.e.*, all of the Defective Loans at issue in this case). Goldman has once again failed to uphold its repurchase obligations regarding the Defective Loans identified in the Post-Complaint Breach Notice and there is no longer any reason why its independent "discovery" of such Defective Loans should occupy this Court's time and resources. *See Dominguez v. Walsh*, No. 22-cv-6443, 2023 WL 6199861, at *4 (S.D.N.Y. Sept. 22, 2023) ("[A]mendment under Rule 15 is designed to afford litigants the 'maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities'") (quoting *Bond v. Nolan*, No. 89-cv-357, 1994 WL 132139, at *1 (S.D.N.Y. Apr. 11, 1994)). To be clear, the Defective Loans identified in the Post-Complaint Breach Notice are already encompassed within this Action, such that the proposed SASC relates back to the initial pleadings under Fed. R. Civ. P. 15(c). Granting the relief sought herein would not expand the scope of or time needed to complete expert discovery or trial of this action. *See, e.g., In re Facebook*, 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013) ("[W]here plaintiffs discover new facts relating to and supporting claims asserted in an earlier pleading, courts routinely permit amendment on the basis of this new information."). There is thus no prejudice to Defendants.

---

[3] The burden of demonstrating any bad faith, prejudice, or futility rests entirely upon the nonmoving party. *See City of N.Y. v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011) ("The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith."); *Bytemark, Inc. v. Xerox Corp.*, No. 17-cv-1803, 2022 WL 94859, at *7 (S.D.N.Y. Jan. 10, 2022) (Gardephe, J.) ("[Parties] opposing a motion to amend … bear[ ] the burden of establishing that an amendment would be futile.") (alterations in original) (quoting *Bonsey v. Kates*, No. 13-cv-2708, 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013)).

Indeed, treating as "noticed" the Defective Loans identified in the Post-Complaint Breach Notice should significantly streamline trial. Absent addition of the "notice" allegations, the Trustee would be required to prove that Goldman had independently discovered the approximately 1,500 Defective Loans that were not explicitly identified in the Pre-Complaint Breach Notice. This would require voluminous evidence and consume extraordinary judicial resources at this bench trial. If permitted to seek repurchase of these same Loans under a "notice" theory, however, the need for that "discovery" evidence would be obviated. Defendants cannot claim prejudice simply because the Trustee has made it easier and quicker to prove its breach claims by allowing the Court to focus on the merits, rather than conducting a sideshow regarding compliance with a procedural prerequisite to suit. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (emphasizing the Circuit's "strong preference for resolving disputes on the merits.") (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

### III.    The Proposed SASC "Relates Back" to the Action's Commencement

The Goldman Response disclaimed any obligation to respond to the Post-Complaint Breach Notice because, it asserted, the "applicable statute of limitations" had "expired" for breach claims associated with the 2,413 Defective Loans in the Post-Complaint Breach Notice. But Goldman's obligation to cure or repurchase materially breaching loans has no expiration date; it continues throughout the PSA's term. The Trustee timely interposed its breach of contract claims within the six-year limitations period provided under CPLR § 213(2) (as extended by agreement) and the SASC relates back to the Trustee's original pleadings. Rule 15(c)(1)(B) provides that "[a]n amendment relates back" when "the amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out … in the original pleading." Fed. R. Civ. P. 15(c)(1); *see also* CPLR 203(f). The standard is whether the original pleading provided sufficient notice of "the general fact situation alleged in the original pleading." *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, No. 08-cv-9203, 2010 WL 1372709, at *8 (S.D.N.Y. Mar. 31, 2010) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999)); *see also In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 528 (S.D.N.Y. 2005) (same).

The Trustee's original pleadings put Defendants on notice that the Trustee sought relief based upon Goldman's breach of its representations and warranties. It alleged that "the breaches of Mortgage Warranties … are likely pervasive throughout the Mortgage Loans securitized in the Trust" and "specifically reserve[d] the right based upon further investigations to identify additional Mortgage Loans that breach the Mortgage Warranties for which claims will be made." (SWN ¶¶ 19, 20; FAC ¶¶ 65, 66.) Finally, it specifically sought "enforcement of the PSA and related Trust Agreements compelling [Defendants] to specifically perform their contractual obligation to repurchase Mortgage Loans, or otherwise compensate the Trust, with respect to **all Defective Loans**." (SWN ¶ 21; FAC ¶ 68 (emphasis added).) Because the pleadings' breach claims encompassed all Defective Loans in the Trust, Defendants were aware from day one that the Trustee seeks relief regarding the Defective Loans identified in the Post-Complaint Breach Notice. *See Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (motion for leave to amend was properly granted because "amendment did not unfairly surprise" adversary).

Hon. Paul G. Gardephe, U.S.D.J.<br>
Case No. 1:19-cv-02307<br>
August 5, 2024<br>
Page 5

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the Trustee requests that it be permitted to file the Motion and SASC to identify as "noticed" 2,413 of the approximately 5,000 thousand loans already encompassed within this Action.

Respectfully submitted,

/s/ Christopher P. Johnson