**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
U.S. BANK NATIONAL ASSOCIATION,
*as Trustee for GSAMP TRUST 2007-HE2*

Plaintiff,

-against-

GOLDMAN SACHS MORTGAGE COMPANY and GS MORTGAGE SECURITIES CORP.,

Defendants.
---------------------------------------------------------------X

**ORDER**

**19-cv-2307 (PGG) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff seeks leave to amend its complaint to include 1,660 additional defective loans pursuant to Fed. R. Civ. P. 15 ("Rule 15"). Dkt. No. 167–69, 172. Defendants oppose any motion to amend under Rule 15 or Fed. R. Civ. P. 16 ("Rule 16"). Dkt. Nos. 170–71.

## I. BACKGROUND

On March 14, 2019, this matter was removed to federal court. Dkt. No. 1. On February 26, 2021, the Court signed a case management plan (the "Original CMP") which set the deadline to amend the complaint as March 26, 2021. Dkt. No. 72. On March 10, 2022, the Court denied Plaintiff's motion for summary judgment concluding that Plaintiff could not prove liability and damages at trial by using a sample of the total loans. See generally Dkt. No. 118. The Court's denial of summary judgment also ordered the Parties to submit a proposed amended case management plan. Id. at 17–18.

On March 17, 2022, the New York Court of Appeals issued a ruling in U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap. Inc., 38 N.Y.3d 169 (2022). The ruling in Bank Nat'l Ass'n provided that, where the contract language provides so, a breach notice in residential mortgage-backed securities ("RMBS") cases must identify each defective loan under the repurchase protocol. 38 N.Y.3d at 181.

On May 6, 2022, the Court signed the Parties proposed case management plan which provided that the complaint could only be amended with leave of the Court. Dkt. No. 126. Similarly, on July 20, 2023, the Court signed another amended case management plan (the "Amended CMP") that also provided the complaint may only be amended with leave of the court. Dkt. Nos. 157–58.

On August 5, 2024, Plaintiff sought leave to amend after it served Defendant with expert reports and loan-specific notice of 1,660 additional non-duplicative defective loans, and Defendant failed to repurchase those loans within the required 90 days. Dkt. No. 164. Defendant opposed that request. Dkt. No. 165. The Court then set a briefing schedule leading to the instant motion. Dkt. No. 166. Without leave of the Court, in January and April 2025, the Parties filed unauthorized additional briefing. Dkt. Nos. 175–178.

## II. DISCUSSION

As a threshold matter, the Parties disagree on whether Rule 16 applies to this motion. Defendants assert that, because the Original CMP set a deadline to amend the complaint and the Amended CMP did not set a new date, this motion is governed

by Rule 16. Plaintiff asserts that because the Amended CMP did not set a schedule for amendment Rule 16 is irrelevant. Dkt. No. 169 at 11 n.10.

The Original CMP set the deadline to amend the Complaint as March 28, 2021. Dkt. No. 72. The Parties proposed initial amended CMP did not inlcude a new deadline to amend and was therefore so ordered with the understanding the Complaint may only be amended with leave of the Court. Dkt. Nos. 125–26. The parties then filed a second amended case management plan that also did not seek a new deadline to amend to Complaint. Dkt. Nos. 156–58. Again, that plan provided the Complaint may only be amended with leave from the Court. Dkt. Nos 157–58. Consequently, Plaintiff has missed the deadline set in the scheduling order and must show good cause under Rule 16. Additionally, Plaintiff must also satisfy Rule 15. See Charter Commc'ns, Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO, 338 F. Supp. 3d 242, 255 (S.D.N.Y. 2018) ("If good cause supports modifying the court-ordered deadline to amend, the moving party must still comply with Fed. R. Civ. P. 15.") (citation omitted). The Court addresses each rule in turn.

### A. Rule 16

"Where a scheduling order governs amendments to the complaint, and a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must show good cause to modify the deadline under Rule 16." Charter Commc'ns, Inc., 338 F. Supp. 3d at 254 (cleaned up) (citing BPP Illinois. LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d 188, 195 (2d Cir. 2017)). "A party has not acted diligently where the proposed amendment to the pleading is based on information that the party knew,

or should have known, in advance of the deadline sought to be extended." Media Glow Digital, LLC v. Panasonic Corp. of N. Am., No. 16-CV-7907 (PGG), 2020 WL 3483632, at *4 (S.D.N.Y. June 26, 2020) (quotation marks and citation omitted).

Plaintiff argues that it has acted diligently because, after the change in law and summary judgment ruling, it timely complied with the re-underwriting expert schedule, promptly notified Defendant of the deficient loans, and moved to amend less than two weeks after Defendant failed to repurchase the Defective loans. Dkt. No. 172 at 4.

Defendant argues that Plaintiff engaged in gamesmanship because it secured additional time to seek discovery on Defendant's discovery of beaches as a "core fact question." Dkt. No. 170 at 15 (quoting Dkt. No. 130 at 2.). However, after conducting that discovery, Plaintiff calls it a "sideshow" that's avoided by the proposed amendment. Id. (quoting Dkt. No. 169 at 16). Defendant also argues that Plaintiff should have pursued this "post-suit notice theory" immediately after the Court of Appeals decision in Bank Nat'l Ass'n and failed to do so. Id. at 15–18. Defendant asserts that Plaintiff, at minimum, should have sought extra time to amend its complaint in one of the amended case management orders. Id. at 15.

Plaintiff, who bears the burden to show good cause, argues that it did not engage in gamesmanship because it could not have known in 2021 that its experts would identify 1,660 additional loans in 2024, and Defendant would fail to repurchase those loans. Dkt. No. 172 at 4–5. Plaintiff also argues that they prior to the Court of Appeals 2022 decision, they had no reason to re-underwrite and provide loan specific

notice. Id. at 5. Similar to its argument for gamesmanship, Plaintiff counters that Defendant's argument on its failure to seek additional time in one of the case management orders would have a been premature request because it would call for the assumptions that Plaintiff would find additional loans and Defendant would fail to repurchase them. Id.

While Plaintiff indeed moved to amend swiftly after Defendants' failure to repurchase, that is not the indication of diligence in the unique circumstances of this matter. Plaintiff in this action was well aware of both the change in law and that Defendant, in Plaintiff's own words, "never intended to repurchase any Defective Loans." Dkt. No. 172 at 6. Accordingly, Plaintiff knew it would be re-underwriting each loan to provide notice of any additional defective loans. And Plaintiff admittedly knew that, once identified, Defendant would fail to repurchase those loans. See id.; Dkt. No. 29 at ¶ 66–68; Dkt. No. 63 at ¶ 65–67. Thus, as early as the Court's March 10, 2022 order and the Court of Appeals' March 17, 2022 ruling, Plaintiff was aware of the very real possibility it would be seeking leave to amend its complaint to include additional defective loans once they were identified and repurchase was denied.

However, in the two amended case management plans, one in May 2022 and one in July 2023, Plaintiff made no mention of this eventuality and no argument to add or modify the date to amend its complaint. See Dkt. Nos. 126, 157–58. A tactic Plaintiff indeed used in the past where it notified the Court in the Original CMP that a possible forthcoming change in the law would require significantly more time to complete discovery. Dkt. No. 72 at ¶ 9, 17. Plaintiff's argument that asking the Court

to consider extending the deadline would have been premature is unavailing for the same predictability discussed above. Furthermore, Plaintiff identified in its original and amended complaints that it expected to uncover additional defective loans. Dkt. No. 29 at ¶ 66–68; Dkt. No. 63 at ¶ 65–67. Asking the Court to at least consider a deadline to amend after such loans were identified would have been appropriate. One of the purposes of setting a forward-looking deadline to amend pleadings is the anticipation of the need to amend for good-faith reasons.

Plaintiff sat on its hands about its intent to amend for nearly two years until each of its predictable worst-case scenarios came true, and only now that they have, Plaintiff seeks leave to amend under the guise of diligence. While Plaintiff was precluded from filing the instant motion for leave to amend until the refusal to repurchase, it could and should have asked for an extended deadline to amend its complaint. This Court does not find Plaintiff's last-minute effort to secure a predictable extension of the deadline to amend an exercise of diligence. Therefore, Plaintiff's motion for leave to amend is **DENIED** for lack of good cause. See AT&T Corp. v. Atos IT Sols. & Servs., Inc., 714 F. Supp. 3d 310, 327 (S.D.N.Y. 2024) (finding lack of diligence where the party sought leave "17 months after the deadline expired, 14 months after receiving [] copies of the documents containing sufficient facts to amend, and four months after [the party] says it became aware of the mole."). Given the Court's conclusion under Rule 16, this Court need not reach the Parties remining arguments under Rule 15.

**The Clerk of Court is respectfully requested to close Dkt. No. 167.**

SO ORDERED.

DATED: New York, New York
August 15, 2025

JENNIFER E. WILLIS
United States Magistrate Judge